THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANTHONY DUPREE, Defendant-Appellant.

Second District   No. 78-124

Opinion filed March 19, 1979.

Mary Robinson and Mark Schuster, both of State Appellate Defender's Office, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant was convicted of armed robbery (Ill. Rev. Stat. 1977, ch. 38, par. 18—2) after a jury trial and sentenced to 4-8 years imprisonment. He contends that he was denied a fair trial because of proof by the State, over his objection, that he had been identified in a previous armed robbery at the same location; and because a police officer

referred, in the course of describing his investigation, to a third incident, a "theft from a house." He also argues that the State did not prove beyond a reasonable doubt that a weapon was used.

The charged offense occurred on July 31, 1977, at the Beef-A-Roo restaurant in Rockford. At trial, two employees, Mary Knodle and Dawn Grace, positively identified the defendant as the robber.

Mary Knodle testified that she was working with Dawn Grace on July 31, 1977, at approximately 10:20 p.m. when a black man entered and announced "this is a stick-up"; that the man took out his gun from the pocket of his leather jacket, wrapped in a handkerchief under which she could see the outline of the barrel. He was standing in front of her at the register, and came to the side of the register and to her side to take out the money. The lighting was bright and she saw the robber's face from a distance of less than one foot for a period of one or two minutes. She subsequently made a photographic identification and also identified the man in a lineup. On cross-examination she was questioned as to whether she had testified that she was not positive of defendant's identification from his photo and referred to her previous testimony at the motion to suppress that defendant "looks like the robber."

Dawn Grace testified to substantially the same circumstances as to the July 31 crime. She was no further than six feet away from the robber and saw his face for a minute or two in good lighting. She made a later photographic identification of defendant.

She also testified to a prior robbery at the same place and approximate hour but on July 26, 1977, when she and one Debra Middleton were present. She was 6-8 feet away from the register then and had a good view of the man's face for about 5 minutes. She identified defendant as the same person in both robberies.

Debra Middleton testified to substantially the same circumstances as to the earlier robbery. The lighting was good and she was close enough to the robber to have touched him. She saw his face for 10-15 minutes. She subsequently identified defendant in a lineup, and positively identified defendant as the July 26 robber in court in the trial of this case. Her testimony that the robber had acne or bumps on his forehead conflicted with the testimony of the other girls that the man's nose was pock marked.

Among other evidence, the State produced the testimony of Detective Bishop who said that a person who identified himself as Anthony DuPree on the telephone called him at the station on August 20, 1977, to inquire why the detective was looking for him at a certain address. He said he "advised the subject on the phone that I was looking for Mr. DuPree reference to a theft from a house." Asked whether he was actually investigating a theft, the officer answered affirmatively. Defendant's motion for a mistrial was denied but the trial court

admonished the jury that the case before them had no connection with a theft from a house and that the testimony was merely an explanation of the telephone call from the defendant.

The defendant testified that he was getting his hair "done" by his cousin Bessie DuPree on the night of July 26, until 11 p.m. Defendant also produced a hospital record to show that he had stitches on his nose on July 11, 1977. There was testimony that the scar, however, would not be noticeable unless one were close. Defendant's cousin and her brother testified to the hair appointment but could not remember the date. Defendant did not produce an alibi for the date of the present offense, stating that he could not remember where he was on July 31.

As a general rule, evidence of offenses other than those for which defendant is being tried are inadmissible because of the clear risk of unfair prejudice. But such evidence may be admissible where it has substantial independent relevance such as, for example, to prove identity. (*People v. Romero*, 66 Ill. 2d 325, 330 (1977); *People v. McDonald*, 62 Ill. 2d 448, 455 (1975).) A number of courts have given expression to the additional consideration noted by McCormick on Evidence 452 (2d ed. 1972) which balances the need for the prejudicial evidence against the availability of other substantial evidence bearing on the issue. See, *e.g., People v. Tuczynski*, 62 Ill. App. 3d 644, 651 (1978); *People v. Butler*, 31 Ill. App. 3d 78, 80 (1975); *People v. Borawski*, 61 Ill. App. 3d 774, 779 (1978).

■■ In this case the testimony of Dawn Grace, who was confronted with an armed robber on the two occasions, comes within the exception since it tended to prove that she was clearly able to identify the defendant partly because of a previous exposure to his similar memorable conduct. The defendant posed a strong challenge to the ability of the witnesses to be sure of defendant's identity and claimed not to have been present on either date so that the evidence could be said to have substantial independent relevance on the issue of identity and outweigh its prejudicial effect.

■■ The testimony of Debra Middleton which related only to the July 26 incident, however, should not have been admitted. The witness was not present at the commission of the offense here charged. The only import of her testimony was to corroborate the testimony of Dawn Grace who was aided in her identification of defendant as the person who committed the armed robbery on July 31 because she had seen the same man under similar conditions five days earlier. The pursuit of the collateral inquiry was, in our view, the type of "overkill" which we do not sanction and in a closer case would be considered reversible error. But in this case the circumstances so clearly prove defendant's guilt that the admission of this testimony is harmless beyond a reasonable doubt.

■■ We reach the similar conclusion that the reference to the investigation of a "theft" was harmless error.

■■ It should be noted that the remark complained of was in answer to a question on direct examination, "What happened at that time?" The brief unresponsive answer did not prevent a fair trial under all the circumstances. While the defendant claims that the answer was intentionally sought to show that defendant was under constant surveillance for criminal activities we are not so persuaded.

■■ Volunteered and unresponsive remarks have been held not to constitute reversible error. (See *People v. Naujokas*, 25 Ill. 2d 32, 35 (1962). See also *People v. Butler*, 58 Ill. 2d 45, 49-50 (1974), and *People v. McCorry*, 51 Ill. 2d 343 (1972).) We find the cases cited by defendant (*People v. Harges*, 87 Ill. App. 2d 376 (1967); *People v. Richardson*, 48 Ill. App. 3d 307 (1977)) to be distinguishable on their facts.

■■ We also conclude that the fact that defendant was armed was proved beyond a reasonable doubt. In direct examination Mary Knodle testified that an object in the robber's hand on July 31 was wrapped in a white handkerchief and said that she believed it to be a gun because she "saw the barrel part." On cross-examination she admitted that she had never seen a gun in the man's hand but an object entirely wrapped in a handkerchief. She did, however, positively identify the partially hidden object as having a barrel. It should also be noted that Mary Knodle testified that the object was made of either metal or possibly wood.

■■■ It is a fair conclusion that when the robber announced that this was a "stick-up" the complaining witness was being threatened with a dangerous weapon capable of being used to cause injury. (See, *People v. Hill*, 47 Ill. App. 3d 976, 978 (1977).) A conviction for armed robbery may be sustained even though the weapon itself is neither seen nor accurately described by a victim. *People v. Elam*, 50 Ill. 2d 214, 220 (1972).

We affirm.

Affirmed.

RECHENMACHER and WOODWARD, JJ., concur.