THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
HOSEA MEADOWS, Defendant-Appellant.

Third District    No. 80-359

Opinion filed January 30, 1981.

Robert Agostinelli and Thomas Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The defendant, Hosea Meadows, appeals from his conviction for the offense of armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—2) following a bench trial in the Circuit Court of Will County. At the conclusion of a sentencing hearing he was sentenced to the minimum six-year term of imprisonment. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(a)(3).) The defendant asks this court to reduce the degree of the offense from armed robbery to robbery, contending that the State failed to prove beyond a reasonable doubt that a dangerous weapon was employed in the commission of the offense.

The defendant and an unknown male were charged by way of indictment with taking currency from Ruth Eubanks, while armed with a shotgun. At trial, Eubanks testified that she was the sole employee on duty at a Joliet gasoline station between 7:30 and 8:30 p.m. when the defendant approached the door to the station. He asked Eubanks for a quart of motor oil. After she led the defendant to a service island where the oil was located, he told her that there was going to be a "stick-up" and pulled his hat down to cover his face. The defendant summoned an accomplice, who vaulted a fence located adjacent to the station. The accomplice was a masked male, and he stood approximately 25 to 30 feet from Eubanks. The defendant then ordered his accomplice to "show her that we're not kidding." The accomplice responded by removing from beneath his raincoat an object which, according to Eubanks' testimony, resembled a "shotgun or something." The accomplice raised the object with two hands and pointed its barrel at Eubanks. She then heard a sound similar to the cocking of a gun's firing mechanism. Although the accomplice remained 25 to 30 feet from Eubanks, he was clearly visible to her because the station service area was well lighted. She testified that the object had a metal barrel about 18 inches long with wood attached to it. She stated at

the trial that although she could not ascertain whether the object was in fact a shotgun or a toy gun, she was frightened by it and obeyed the defendant's orders accordingly. While the defendant and Eubanks returned to the station in order for him to remove the money from the station's cash register, the accomplice remained outside with the gun-like object visible. In the process of gaining a key to a locked strong box, the defendant struck Eubanks in the face with his fist.

At that same time the station manager arrived, whereupon he charged the defendant and, after a struggle, subdued him. The accomplice fled from the scene. Neither he nor the gun-like object were discovered. The station manager corroborated Eubanks' testimony concerning the occurrence after the manager arrived, but no one other than Eubanks witnessed the accomplice or the purported gun.

The trial judge found Eubanks' testimony clear and convincing and indicated that the weapon was proved to be dangerous. The judge also noted that even if the object held by the accomplice were a pipe instead of a shotgun, it could have been used against the victim as a bludgeon. The defendant was found guilty of armed robbery. The court, after considering the defendant's youthful age, his lack of past criminality, his willingness to cooperate with the police, and his dependence on alcohol, sentenced the defendant to the mandatory minimum sentence of six years' imprisonment.

On appeal the defendant contends that an essential element of the offense of armed robbery—that the offense was committed with a dangerous weapon—was not proved beyond a reasonable doubt because of the equivocal and uncorroborated testimony by Eubanks which consisted entirely of circumstantial evidence; hence, we should reduce the degree of the offense to robbery. He further contends that the court based its finding that a dangerous weapon was used in the commission of the robbery solely upon Eubanks' subjective impressions, which are an insufficient basis for proving armed robbery according to the recent supreme court decision of *People v. Skelton* (1980), 83 Ill. 2d 58, 414 N.E.2d 455.

Illinois Supreme Court Rule 615(b)(3) authorizes a reviewing court to reduce the degree of the offense of which the appellant was convicted. (Ill. Rev. Stat. 1979, ch. 110A, par. 615(b)(3).) We will not, however, reduce the degree of the offense out of merciful benevolence; there must be an evidentiary weakness for a reviewing court to act. *People v. Mau* (1980), 88 Ill. App. 3d 924, 411 N.E.2d 323; *People v. Coleman* (1979), 78 Ill. App. 3d 989, 398 N.E.2d 185.

■■ The State, as one element of the offense of armed robbery, must prove beyond a reasonable doubt that a robbery was committed while the defendant carried or was otherwise armed with a dangerous weapon.

(Ill. Rev. Stat. 1979, ch. 38, par. 18—2(a); *People v. DeLeon* (1976), 40 Ill. App. 3d 308, 352 N.E.2d 234.) The use of a dangerous weapon can be inferred from circumstantial evidence. (*People v. Dupree* (1979), 69 Ill. App. 3d 260, 398 N.E.2d 391.) The parameters of what constitutes a dangerous weapon have been left primarily to judicial construction; however, our supreme court in *Skelton* rejected a purely subjective test for proving the use of a dangerous weapon, noting that:

> "* * * many objects, including guns, can be dangerous and cause serious injury, even when used in a fashion for which they were not intended. Most, if not all, unloaded real guns and many toy guns, because of their size and weight, could be used in deadly fashion as bludgeons. Since the robbery victim could be quite badly hurt or even killed by such weapons if used in that fashion, it seems to us they can properly be classified as dangerous weapons although they were not in fact used in that manner during the commission of the particular offense. It suffices that the potential for such use is present; the victim need not provoke its actual use in such manner.
>
> In the great majority of cases it becomes a question for the fact finder whether the particular object was sufficiently susceptible to use in a manner likely to cause serious injury to qualify as a dangerous weapon." *People v. Skelton* (1980), 83 Ill. 2d 58, 66.

The defendant seems to argue that after *Skelton* the State may no longer prove the existence of a dangerous weapon circumstantially. We disagree, since *Skelton* only barred evidence of the victim's beliefs concerning the nature of the weapon, not evidence of objective observations that lead to the reasonable inference by the trier of fact that a dangerous weapon was used in the commission of a robbery.

■■ We are unpersuaded by the defendant's second argument that merely because the defendant told Eubanks that he intended to "stick-up" the station, her entire testimony was "colored" by the fact that she was somehow preconditioned to see a gun. In a nonjury trial, the trial judge has the responsibility to determine the credibility of the witnesses and the weight accorded to their testimony. A reviewing court will not substitute the findings of the trial judge unless the evidence is so unsatisfactory as to leave a reasonable doubt of the defendant's guilt. There is no evidence to support this argument of the defendant, nor does he fare any better as to the law, since two recent cases have upheld armed robbery convictions based on circumstantial evidence where the defendant informed his victims that there would be a "stick-up." See *People v. Dupree* (1979), 69 Ill. App. 3d 260, 387 N.E.2d 391; *People v. Myatt* (1978), 66 Ill. App. 3d 642, 384 N.E.2d 85.

We further cannot agree with the defendant's characterization of

Eubanks' testimony as equivocal and thus insufficient to convict him of armed robbery. He points to her statement at trial that, while the object held by the accomplice looked like a gun, she was uncertain whether it was one in fact. The defendant also claims that Eubanks caught "only a glimpse" of the object. He argues that such equivocation and limited observation may render the proof about such a dangerous weapon open to question.

The defendant seems to argue that where a gun used in an armed robbery is not fired, the State must demonstrate that the defendant was armed with a loaded, operable gun. *Skelton* does not require such an onerous burden; it only rejected the use of subjective impressions of the victim regarding the nature of the weapon. The State can still prove the use of a dangerous weapon by objective circumstantial evidence as in the case at bar.

Here, the State introduced uncontroverted testimony by the victim that the defendant's accomplice raised and pointed at her an object of substantial weight with a metal barrel and a wooden stock. Although the offense occurred at night, the accomplice stood in a well-lighted area approximately 10 yards from the victim. In fact, she was within such proximity to the object that she heard a "click" similar to the priming of a gun's firing mechanism. Even after she and the defendant entered the station, she still saw the weapon in the accomplice's hands.

■■ While the evidence of whether the weapon in the instant case was a shotgun is circumstantial, the testimony of the victim supports such an inference and finding by the trier of fact. (*People v. Dupree*; *People v. Myatt.*) Although her conclusions as to whether the object was an operable gun could be termed equivocal and subjective, her observations regarding the characteristics of the object were objective in nature, and that testimony was unequivocal. From Eubanks' uncontroverted testimony, the judge stated that there existed no reasonable doubt in his mind that the defendant's accomplice was armed with a dangerous weapon.

■■ The defendant would equate the situation in the instant case with that in *People v. Coleman* (1979), 78 Ill. App. 3d 989, 398 N.E.2d 185. It was in *Coleman* that this court, pursuant to Supreme Court Rule 615(b)(3) (Ill. Rev. Stat. 1979, ch. 110A, par. 615(b)(3)), reduced the degree of the offense of which the defendant had been convicted. Such attempted equation is not tenable for a number of reasons. In *Coleman* the victim's testimony was controverted and the jury reached a verdict only after receiving a *Prim* instruction. This court noted in *Coleman* that the evidence was extremely, if not fatally, weak in establishing that the defendant was guilty of armed robbery. Without making a further recitation of the evidence in the instant case, we will and do make the observation that the evidence was not so weak as to raise a reasonable doubt of the

defendant's guilt. An expression of dissatisfaction by the trial judge regarding the sentence to be imposed will not by itself trigger the application of *Coleman* and thereby mandate that the degree of the offense of which the defendant has been convicted should be reduced.

Assuming, *arguendo*, that the evidence in the case at bar was insufficient to permit a reasonable inference that the defendant's accomplice held a shotgun in his hands, the trial judge also found that Eubanks' testimony clearly and convincingly established that the object could have been used as a bludgeon. The defendant argues that because the accomplice did not use the object as a bludgeon, and because the accomplice was not in close proximity to the victim, the trial judge was incorrect in characterizing it as a bludgeon. We disagree, because, according to *Skelton*, the victim need not provoke its actual use in the manner of a bludgeon to prove involvement of a dangerous weapon. Thus, the fact that the accomplice stood holding the object 10 yards from the victim does not render it harmless.

For the foregoing reasons, the defendant's conviction for armed robbery and the imposition of the statutorily defined minimum six-year prison sentence are affirmed.

Affirmed.

ALLOY, P. J., and STOUDER, J., concur.