THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RICHARD KARGOL, Defendant-Appellant.

Fourth District    No. 4—90—0783

Opinion filed September 12, 1991.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and Timothy J. Londrigan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE LUND delivered the opinion of the court:

On June 19, 1990, defendant Richard Kargol was found guilty by a jury sitting in the circuit court of Vermilion County of six counts of aggravated criminal sexual assault. (Ill. Rev. Stat. 1989, ch. 38, par. 12—14.) Ultimately, the court found some charges merged and sentenced defendant on three convictions. On these counts it was alleged that defendant placed his penis, finger, and thumb in the anus of M.H.; defendant was a family member and the grandfather of M.H.; and this conduct caused bodily harm to M.H. (Ill. Rev. Stat. 1989, ch.

38, par. 12—14(a)(2).) The court imposed three concurrent 10-year prison sentences. Defendant now appeals.

The State's first witness was Lori Hyde, the mother of M.H. She stated that M.H.'s father was Larry Kargol, and that defendant was M.H.'s grandfather. At the time of trial M.H. was three years old. Before the incident in this case, M.H. enjoyed visiting with defendant and did so on a regular basis. On March 2, 1990, M.H. went to stay with defendant. That evening, M.H. wanted to go home, so defendant brought him back. However, when defendant started to leave again, M.H. wanted to go with him, so he was permitted to do so.

Defendant brought M.H. back on March 5, 1990. When M.H. arrived, Hyde observed he was acting strangely and had an expression on his face as if he had done something wrong. When asked what was wrong, he stated his "butt" hurt. He told her he fell on a jukebox and she laughed it off. However, he returned to her shortly, stating his butt hurt. Initially he said he did not wish to tell her what happened.

Hyde took M.H. into the bathroom for privacy and asked him again what happened. He then told her that defendant and Larry put medicine on his butt and put their fingers in his butt. He also stated defendant put his "pecker" in his butt. She explained this is how M.H. referred to a penis. He told her he cried and that they told him to shut up. She then took him to the hospital. Since that time, M.H. wakes up in the middle of the night crying and yelling "stop" or "don't." He is also frightened around men and does not want to see his grandfather again. At this point M.H. was called to testify, but he was unable or unwilling to do so.

Gene Woodard, the juvenile investigator for the Danville police department, stated he spoke with M.H. on March 6, 1990, at the Danville Young Women's Christian Association (YWCA). Woodard was already familiar with the allegations by M.H. and the terminology M.H. used. M.H. told him defendant and Larry hurt him over the weekend. M.H. explained they had put medicine on his butt and then put their fingers and thumbs in there. He then whispered that defendant also put his pecker in there. M.H. looked around and seemed ashamed before stating this. M.H. also stated he did not want to see defendant again or go back to his house.

Later that day, Woodard interviewed defendant. Woodard showed defendant pictures of M.H.'s anus taken at the hospital. Defendant started crying and stated he knew nothing of the injuries. He then stated he believed Larry caused these injuries to M.H., because he believed Larry was homosexual and had a lot of problems.

Jeanne Burke is an investigator of the Department of Children and Family Services (DCFS). She testified that on March 5, 1990, she was called to the hospital concerning a possible sexual abuse case. M.H. told her that defendant hurt him. He stated that defendant put medicine on his fingers and put his fingers and thumbs in M.H.'s butt. Robert Huff of the Danville police department was also at the hospital, and M.H. told him the same thing.

Peggy Johnson, crisis services coordinator for the YWCA, testified that she was present when Woodard interviewed M.H. on March 6, 1990. M.H. told them that defendant put medicine on his butt and also inserted his finger and thumb. At that point, M.H. appeared to become very embarrassed. Johnson asked if he would like her to cover her ears. In response to his affirmative reply, she acted as though she was covering them. M.H. looked around the room and then whispered that defendant put his pecker in M.H.'s butt. M.H. then pointed to his own penis to show what pecker meant.

The State's final witness was Dr. Melvin Earhardt, the emergency room physician on duty when M.H. arrived. He examined M.H.'s anus. There was a large, red irritated area of the sphincter. He identified pictures of this area. He questioned Hyde about the possible use of rectal suppositories or creams. He explained this is the only diagnosis, other than trauma by introduction of a foreign object, which could explain the injury. When Hyde replied that none were used, Earhardt made a medical diagnosis of suspected child abuse.

Defendant testified that his two sons, Ricky and Larry, lived with him. On the weekend in question, he brought M.H. to his home. He worked part of that weekend cleaning local businesses and, when he went to work, M.H. was either with Ricky or Larry. He stated M.H. never complained about his anus hurting him, and defendant denied performing any alleged acts. The jury found defendant guilty.

On appeal, defendant contends the court improperly allowed witnesses to testify to the statements of M.H.; that, even with this evidence, he was not proved guilty beyond a reasonable doubt; and that the imposed 10-year prison sentences were excessive.

We turn first to the sufficiency of the evidence since, if the State has not met the required burden, the other questions are immaterial.

A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of defendant's guilt. (*People v. Vriner* (1978), 74 Ill. 2d 329, 342, 385 N.E.2d 671, 676.) When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267,

277.) Once the defendant has been found guilty of the charged crime, the fact finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution. (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; *Collins,* 106 Ill. 2d at 261, 478 N.E.2d at 277.) The relevant question is whether, if after viewing the evidence in such a fashion, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson,* 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789; *Collins,* 106 Ill. 2d at 261, 478 N.E.2d at 277.

In the present case, the victim was unable to testify despite everyone's efforts, which is entirely understandable due to his tender age. Accordingly, the State's case was made almost entirely by hearsay testimony in which various people recounted what the victim had told them. This is permissible pursuant to section 115—10 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 115—10).

The victim's mother testified to M.H.'s initial report of the violation, relating the details and the assailants. Also testifying to M.H.'s reports to them were Woodard, Burke, and Johnson. Dr. Earhardt's testimony, considered in the light most favorable to the State, establishes that M.H. suffered some sort of trauma to his anus, which buttresses M.H.'s statements to the others. We find this evidence sufficient.

■ Defendant points out that the jury was instructed, pursuant to section 115—10(c) of the Code, that in determining what weight to give to these statements the jury should consider the age and maturity of M.H., the nature of the statements, and the circumstances under which they were made. (Ill. Rev. Stat. 1989, ch. 38, par. 115—10(c).) He maintains that considering these factors, especially in view of the fact that M.H. was unable to testify coherently, the jury should have disregarded these statements. However, the questions of the credibility of the witnesses and the resolution of evidentiary conflicts are for the trier of fact. (*Collins,* 106 Ill. 2d at 261-62, 478 N.E.2d at 277.) Here, it determined the statements were credible and believed them. We note this conclusion is supported by the physical evidence showing the trauma to M.H.'s anus and by the testimony showing that M.H. became very embarrassed when speaking of the incident involving defendant's penis. We conclude that the evidence, considered in the proper light, is sufficient.

■ Defendant next contends the court erred in admitting the hearsay testimony pursuant to section 115—10 of the Code. Sections 115—10(a) and (b) provide that in a prosecution such as the present one:

"(a) *** [T]he following evidence shall be admitted as an exception to the hearsay rule:
***

(2) testimony of an out of court statement made by such child describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceeding; or

(B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement."
(Ill. Rev. Stat. 1989, ch. 38, pars. 115—10(a), (b).)

Defendant's main objection is that the court failed to hold the required pretrial hearing and make the required finding concerning the reliability of the statement.

We recently had the opportunity in *People v. Coleman* (1990), 205 Ill. App. 3d 567, 563 N.E.2d 1010, to review section 115—10 in light of the recent United States Supreme Court opinion in *Idaho v. Wright* (1990), 497 U.S. 805, 111 L. Ed. 2d 638, 110 S. Ct. 3139, and assertions that this section violated the confrontation clause. There, we observed that historically to determine when the admission of hearsay evidence did not violate the confrontation clause, it was necessary for the State to show (1) the witness was unavailable, and (2) the witness' statement bears an adequate "indicia of reliability." (*Coleman*, 205 Ill. App. 3d at 581, 563 N.E.2d at 1018-19.) While there is some question as to the continued vitality of the first requirement (see *Coleman*, 205 Ill. App. 3d at 582, 563 N.E.2d at 1019), that question is not now before us.

■ It is the second aspect of the analysis which is germane to the present controversy. This is the requirement that the hearsay testimony in question contain a sufficient "indicia of reliability." In *Coleman*, we observed that since the section 115—10 hearsay exception is not a firmly rooted hearsay exception, "the statement must show a

particular guarantee of trustworthiness to be admissible." (*Coleman,* 205 Ill. App. 3d at 583, 563 N.E.2d at 1020.) We explained:

> "Section 115—10(b)(1) provides that, prior to the evidence being found admissible, a hearing should be conducted, and the court must find that 'the time, content, and circumstances of the statement provide sufficient safeguards of reliability.' (Ill. Rev. Stat. 1989, ch. 38, par. 115—10(b)(1).) *By providing for such a hearing, our statute has been held to comply with the confrontation clause's required showing of particular guarantees of trustworthiness. (Rocha,* 191 Ill. App. 3d at 541, 547 N.E.2d at 1342.) However, as noted, *Wright* has more particularly indicated what is needed to meet this requirement. Accordingly, it is necessary to construe the general language of section 115—10(b)(1) to be in line with the more particular language of *Wright.* Thus, the required finding that the statement provides 'sufficient safeguards of reliability' must be understood to be of a comparable nature with a finding that the circumstances of the statement render the declarant 'particularly worthy of belief' and, in reaching this decision, the court must consider only those circumstances which surround the making of the statement." (Emphasis added.) *Coleman,* 205 Ill. App. 3d at 583-84, 563 N.E.2d at 1020-21.

In the case at bar no such pretrial hearing was held, and neither was such a determination by the trial court made. This is error. Accordingly, it is necessary for us to remand this matter so that the hearing can be held. If the court finds the statements involved meet the required standard, then the conviction shall be affirmed and defendant can seek review on that limited determination. Conversely, if the court finds the statements do not meet this standard, then the case shall be reversed and remanded since the admission of the evidence clearly prejudices defendant.

The State argues defendant has waived this issue by failing to request a hearing and by failing to object to the absence of the hearing and required determination. We observe sections 115—10(b)(1) and (d) indicate that a hearing must be held and the proponent of a statement must give the adverse party notice of the intent to use the statement. (Ill. Rev. Stat. 1989, ch. 38, pars. 115—10(b)(1), (d).) We believe this reasonably places responsibility to request a hearing upon the party advocating use of the statement. In this case, that was the State. Accordingly, the fact that defendant did not request such a hearing does not waive the necessity of it being held. In regard to the second assertion, it is possible for a party to waive this error, as most

others, by failing to object. However, in the present case, while not making this specific objection, defendant did raise a confrontation clause objection. We also conclude that since *Wright* and *Coleman* were not decided at the time of trial, it would be inappropriate to hold that defendant has waived any issue predicated on these cases. Accordingly, we find that the ends of justice would not be served, in this case, by application of the waiver doctrine.

■ Defendant next contends the sentence imposed was excessive. Defendant was convicted of three Class X felonies which call for a mandatory prison sentence of 6 to 30 years. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(3).) The sentencing hearing establishes that defendant has no prior felony or misdemeanor convictions. At the hearing, various people testified to defendant's good character. A daughter and son-in-law testified to defendant's parenting skills, his relation to their daughters, and their faith in his ability to care for the girls. The court reviewed the statutory mitigating and aggravating factors. (Ill. Rev. Stat. 1989, ch. 38, pars. 1005—5—3.1, 1005—5—3.2.) In imposing a sentence above the minimum, the court relied on the facts that this involved a very small child, a matter of trust, and the violence of the crime.

Sentencing decisions are left to the discretion of the trial court and will not be disturbed absent an abuse of that discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.) A court's sentencing decision is to be given great deference and weight. (*Perruquet*, 68 Ill. 2d at 154, 368 N.E.2d at 884.) Accordingly, it will not be disturbed by a reviewing court simply because it might balance the factors differently. *People v. Cox* (1980), 82 Ill. 2d 268, 280, 412 N.E.2d 541, 547.

It is defendant's position that the three aggravating factors relied upon by the court are improper factors to be considered because they are implicit to the offenses for which he was convicted. (See *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906.) Therefore, he believes the 10-year sentences should be vacated and the minimum six-year sentence imposed.

It is clear that generally it is improper to consider factors implicit to the offense as aggravating factors. However, the supreme court in *People v. Saldivar* (1986), 113 Ill. 2d 256, 497 N.E.2d 1138, clarified what is and is not proper to consider. There, in a voluntary manslaughter case, the court observed it is proper to consider the degree of harm involved, even though harm is implicit in the offense. (*Saldivar*, 113 Ill. 2d at 269, 497 N.E.2d at 1143.) This is simply an acknowledgement that in cases where the conduct is more egregious

than the normal violation, it is appropriate for the court to consider this conduct in imposing sentence, even if it is implicit in the offense.

In the case at bar, the court first found that the crime involved a small child. To complete the offense of aggravated criminal sexual assault as charged, the victim must be under 18 years of age. (Ill. Rev. Stat. 1989, ch. 38, pars. 12—14(a)(2) (bodily harm element), 12—13(a)(3) (under 18 element).) The fact that the victim was only three years of age makes the conduct sufficiently out of line with that envisioned by the statute to be properly considered as aggravating. Similarly, another element of the offense is that defendant is a family member of the victim, and the court considered the matter of trust between defendant and M.H. as an aggravating factor. However, as the court noted, this case involves a high degree of love and affection on M.H.'s part, which again separates it from other cases involving family members.

The third factor mentioned was the violence of the violation. The offense charged required a finding of bodily harm to the victim. While we do not wish to underestimate the trauma involved, we do not believe the evidence establishes that the violence involved in the present case is out of the ordinary for similar offenses. Accordingly, this factor is improper. However, it is settled that no remandment is necessary when the weight placed upon an aggravating factor is so insignificant that it did not lead to a greater sentence. (See *People v. Bourke* (1983), 96 Ill. 2d 327, 332, 449 N.E.2d 1338, 1340.) This is the situation here.

We note that the trial court "merged" the guilty verdicts in counts I, III, and V into the guilty verdicts in counts II, IV, and VI, respectively. The significance of that action lies in the fact that aggravated criminal sexual assault can be charged in substantially different ways. Counts I, III, and V alleged that defendant committed the offense of aggravated criminal sexual assault in violation of section 12—14(b)(1) of the Code because, being a person over 17 years of age, he committed an act of sexual penetration upon M.H., a person under 13 years of age. The difference between counts I, III, and V is the alleged means of penetration: (I) penis, (III) thumb, and (V) finger.

On the other hand, in counts II, IV, and VI, defendant was charged with aggravated criminal sexual assault in violation of section 12—14(a)(2) of the Code, based upon his committing an act of sexual penetration upon the victim by the use of force or threat of force and his causing bodily harm to M.H. Again, the difference between counts II, IV, and VI is the means by which the penetration is alleged to have occurred.

Thus, it is clear that "bodily harm" was not an element of counts I, III, and V, even though it was an element of counts II, IV, and VI; accordingly, had the trial court "merged" defendant's convictions of aggravated criminal sexual assault on counts II, IV, and VI into his convictions for aggravated criminal sexual assault under counts I, III, and V—instead of doing it the other way around—there would have been no impropriety in the trial court's considering as an aggravating factor that defendant's conduct caused bodily harm to the victim. We provide this explanation because when trial courts are of a mind to "merge" convictions—that is, to vacate some convictions of a particular offense based upon the same physical act as other convictions of that same offense—they might wish to consider the elements underlying the different ways in which that offense can be committed so as to avoid the argument made in the case before us, which is that the trial court, at sentencing, improperly considered as a factor in aggravation conduct—bodily harm—which is inherent as an element of the offense of which defendant was convicted.

Defendant was convicted of three Class X felonies. Thus, he could have received a sentence of up to 30 years' imprisonment. Further, defendant could have been sentenced to an extended-term sentence of 30 to 60 years because he committed an aggravated criminal sexual assault upon a victim under 18 years of age (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(c); *Coleman*, 205 Ill. App. 3d at 585-86, 563 N.E.2d at 1022), and he could have (and since it is mandatory *should* have) received consecutive sentences. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(a); *People v. Lafferty* (1990), 207 Ill. App. 3d 136, 138, 565 N.E.2d 279; *People v. Lipscomb* (1991), 215 Ill. App. 3d 413.) Considering the possible penalties and the conduct involved in the instant offenses, we find no abuse of discretion with the imposition of sentence above the minimum.

For the above-mentioned reason, defendant's conviction and sentences are affirmed subject to the hearing on the admissibility of the statement. This matter is remanded solely for a hearing in compliance with section 115—10 of the Code and the provisions of this opinion.

Affirmed in part; remanded in part.

STEIGMANN and McCULLOUGH, JJ., concur.