THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRY WILLIS *et al.*, Defendants-Appellants.

First District (6th Division)    Nos. 1—91—3232, 1—91—3236, 1—91—3980 cons.

Opinion filed December 11, 1992.

Rita A. Fry, Public Defender, of Chicago (Kyle Wesendorf, Assistant Public Defender, of counsel), for appellants Terry Willis and Camille Smith.

Thomas J. McDonough, of Chicago, for appellant Robert Smith.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Jon J. Walters, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following separate, simultaneous bench trials, defendants Terry Willis, Camille Smith and Robert Smith were found guilty of armed robbery, and each defendant was sentenced to six years' imprisonment. Defendants appeal, contending that they were not proved guilty beyond a reasonable doubt. Willis and Camille Smith further contend that the trial court improperly restricted the cross-examination of the victim.

The following facts were adduced at trial. Camille Smith and the victim, Eddie Davis, previously dated and lived together. On August 19, 1988, the victim called Camille and asked whether she wanted to go for a drink later that night after he finished work. Camille agreed, and the two arranged to meet at a tavern. The victim arrived at the tavern around midnight. Camille and her cousin, Robert Smith, arrived shortly thereafter. Camille asked the victim to give Robert gas money for driving her to the tavern. The victim gave the money to Robert. Camille and the victim sat at the bar and ordered drinks.

Approximately 10 minutes later, Willis entered the bar. After a brief conversation, Willis asked the victim for bus fare. The victim gave the money to Willis, and also bought him a beer. The victim told Camille that he did not intend to spend any more money on her friends.

Camille agreed, and she and the victim left the bar. After visiting an adjacent restaurant, they walked to the corner to catch a bus or cab. While they were waiting at the corner, a co-worker of the victim's, Jerome Ferguson, and his girl friend pulled up to the curb and asked whether they wanted to accompany them to a barbecue restaurant. Camille and the victim entered Ferguson's car and drove to the restaurant. Ferguson entered the restaurant while his girl friend remained in the car.

The victim testified that he and Camille exited the automobile and were walking south to the corner of 79th Street. Willis and Robert were walking toward them. Willis ordered the victim to give him his money, and hit him with a shiny circular object which the victim described as a gun or pipe with a hole in it. The victim stated that the weapon was approximately six inches long and that it was made of steel. Willis hit the victim's left wrist with the weapon. During the course of the ensuing fight with Willis and Robert, they hit the victim and knocked out two of his teeth. Robert and Willis tried to remove the victim's wallet from his back pocket. Willis told Camille to take the victim's wallet while he and Robert held him down. Camille jumped on the victim, tore his pants, and took the wallet out of his pocket. The three defendants then fled through an alley. The victim estimated that his wallet contained approximately $700.

Ferguson took the victim to the police station at 51st and Wentworth to file his complaint. The victim's brother, who was an officer at that station, took him to the hospital. The victim's wrist

was fractured in three places. He also received bruises and scars as a result of the altercation.

On cross-examination, the victim stated that after he refused to drop the charges against Camille, her family became angry and accused him of sexually molesting Camille's daughter. He denied arguing with Camille about the purported molestation on the evening of the robbery. The victim further testified that the object wielded during the robbery could have been a pistol, pipe, or a wrench; it could not have been a ring on the finger of one of the assailants.

On redirect examination, the victim testified that Camille's mother fabricated the allegations against the victim to intimidate him into dropping the charges against her daughter. The victim first learned of the allegations during a court appearance after the robbery. Charges were never filed against him.

Ferguson testified for the State that he worked with the victim and that they worked until 10 p.m. on the night of the incident. At about 12:45 a.m., he and his girl friend saw the victim and Camille. Ferguson asked the couple whether they needed a ride and drove them to a barbecue restaurant. After Ferguson entered the restaurant, his girl friend ran in and spoke to him. He ran outside and saw two men holding the victim down on the ground and going through his pockets. Ferguson did not see Camille at that time. Ferguson ran over to the victim and asked whether he was hurt. Ferguson drove the victim to the police station and later identified Willis and Robert at a police lineup.

On cross-examination, Ferguson stated that Camille and the victim never argued while they were in his car. Ferguson did not see a weapon during the attack; however, he was standing approximately 20 feet from where the incident occurred.

The parties stipulated that if Detective Barry Costello were called as a witness, he would testify that on September 2, 1988, he interviewed Willis and Robert. Willis told Costello that he did not know the victim, nor did he have any knowledge of the armed robbery. Robert indicated that he knew the victim and he saw him on the night of the incident, but that he had no knowledge of the robbery.

During a second interview conducted after the lineup, Willis told Costello that he was with Robert in his automobile, which was parked on Halsted Street. Willis observed the victim and Camille across the street arguing. Robert joined in the melee. The victim was knocked to the ground, and Camille ripped the victim's pants

and took his wallet. Camille and Robert returned to the car and they left the area.

During Robert's second interview, he told Costello that he observed the victim arguing with Camille. Willis exited the automobile with a shiny object in his hand and approached Camille and the victim. Shortly thereafter, a fight ensued and the victim was knocked to the sidewalk by Willis. Camille ripped the victim's pants and took his wallet. Willis and Camille returned to the car and they left the area. Robert received $40.

The parties further stipulated that Doctor Young of Roseland Community Hospital treated the victim and determined that there were two left lower incisors missing from his mouth. He would further testify that the victim's left wrist had a comminuted fracture.

At the close of the State's case in chief, the trial court denied defendants' motion for a directed verdict on the armed robbery count. They unsuccessfully argued that the State had failed to prove beyond a reasonable doubt the existence of a dangerous weapon.

Camille testified that the victim had been her boyfriend for approximately three years. On the night of the incident, Camille, Robert and Willis went to the lounge where she met the victim. The group began drinking beer. Camille asked the victim why he had molested her daughter. She then left the lounge with the victim and Willis. Robert returned to his car. Thereafter, Ferguson and his girl friend gave the couple a ride. A fight commenced between the victim and Camille concerning the accusations of molestation. Camille stated that she hit the victim, and he hit her back. Willis then tried to break up the fight. Camille admitted that while she had the victim on the ground, she saw his wallet, took it and walked away. She took the wallet because the victim attempted to sexually abuse her daughter. Willis was present when Camille took the wallet; however, she was the only person who struck the victim. Camille also stated that the victim had lost his teeth prior to this incident.

On cross-examination, Camille stated that she broke up with defendant approximately one month prior to this incident after she learned that he had molested her daughter. Camille never called the police or filed any charges against the victim.

At the close of all the evidence, the judge determined whether a dangerous weapon was used by considering the following factors:

> "The record in this case reflects the testimony of Davis as being a shiny object, like steel, six inches long, and capable

of imposing an injury to the extent that medical treatment required putting his arm in a cast. Whether it's permissible for me to conclude that his arm or his wrist was therefore fractured without any medical evidence to support that is not relevant. But it is relevant that the evidence shows that whatever the injury was, it was severe enough to cause the arm to be placed in a cast by the instrumentality that he said Mr. Willis had. Consequently, I find this to be an armed robbery as defined in our statute."

On appeal, defendants contend that they were not proved guilty beyond a reasonable doubt. All three defendants argue that the State failed to prove the use of a dangerous weapon. Willis makes the additional argument that the State failed to prove that he was accountable for Camille's action.

■ Defendants assert that the evidence regarding the character of the object was insufficient to demonstrate that it was a dangerous weapon within the purview of the armed robbery statute. That statute provided in relevant part:

"A person commits armed robbery when he or she violates Section 18—1 [robbery] while he or she carries on or about his or her person, or is otherwise armed with a dangerous weapon." Ill. Rev. Stat. 1987, ch. 38, par. 18—2(a).

Defendants rely upon *People v. Skelton* (1980), 83 Ill. 2d 58, 414 N.E.2d 455, in which our supreme court found that the defendant could not be found guilty of armed robbery where the toy gun used in the commission of the offense was only 4½ inches in length, was quite light in weight, and except for the cylinder, it was constructed entirely of hard plastic. The court found that it was entirely too small and light in weight to be used as a bludgeon, fired no pellets, and except for the fact that it would conceivably have been used to poke a victim in the eye, it was harmless.

■ We find, however, that the present case is factually distinguishable from *Skelton*. The *Skelton* court noted that in the great majority of cases, it becomes a question for the fact finder whether the particular object was sufficiently susceptible to use in a manner likely to cause serious injury to qualify as a dangerous weapon. Where the character of the weapon is such as to admit of only one conclusion, the question becomes one of law for the court. (*People v. Skelton*, 83 Ill. 2d at 66, citing *People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164; *People v. Dwyer* (1927), 324 Ill. 363, 155 N.E. 316.) Here, the victim testified that after he was ordered by Willis to give him his money, he was struck with a shiny circular

object which he described as a gun or pipe with a hole in it. He stated that the weapon was six inches in length and that it was made of steel. The victim's left wrist was struck repeatedly with the weapon, and he felt pain each time he was struck. As a result of this injury, the wrist was fractured in three areas and placed in a cast.

■ While Ferguson stated that he did not see the victim's attackers with any type of metal object, we note that the robbery occurred late at night and that he was standing approximately 20 feet away.

We are also unpersuaded by the claims that the trial judge relied on facts outside the record to determine that the victim's wrist injury was caused by a dangerous weapon. Even if we set aside the controverted evidence concerning whether the victim lost two teeth as a result of this incident, we find that the damage sustained to the victim's wrist, in conjunction with the bruises and scars he received during the altercation, is sufficient to substantiate the victim's assertion that a dangerous weapon was used during the commission of the robbery. The trial judge was entitled to infer from circumstantial evidence that a dangerous weapon was used. *People v. Meadows* (1981), 92 Ill. App. 3d 1028, 416 N.E.2d 404; *People v. Dupree* (1979), 69 Ill. App. 3d 260, 387 N.E.2d 391.

Willis maintains that there was a reasonable doubt that he participated in the taking of the wallet so as to be accountable for Camille's actions. Willis attacks the trial judge's conclusion that based upon the victim's and Camille's testimony alone, there was insufficient evidence of his guilt, but when Ferguson's testimony was taken into account, the totality of the evidence supported Willis' conviction.

It is well established that a criminal conviction will not be set aside on insufficiency of evidence grounds unless evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Kargol* (1991), 219 Ill. App. 3d 66, 578 N.E.2d 1356.) As the United States Supreme Court observed in *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis added.)

■ In this case, the record establishes the victim stated that Willis ordered him to give him his money, and struck him in the wrist and mouth with a metal object. Robert and Willis then at-

tempted to remove the victim's wallet from his back pocket. Ferguson stated that he saw two men holding the victim down on the ground, and that they were going through his pockets. Ferguson identified Willis at a lineup as one of the perpetrators of the offense.

We find this evidence sufficient to establish that Willis, Robert and Camille were acting in concert; as such, we support Willis' conviction on the basis of accountability. (Ill. Rev. Stat. 1987, ch. 38, par. 5—2(c).) In *People v. English* (1975), 32 Ill. App. 3d 691, 336 N.E.2d 199, this court upheld a conviction for armed robbery where the only act in which one defendant did not take part was physical removal of money from the victim either as a principal or on the basis of accountability. The law commits to the trier of fact the determination of credibility of witnesses, weight to be given their testimony, and inferences to be drawn from the evidence. (*People v. Gholston* (1984), 124 Ill. App. 3d 873, 464 N.E.2d 1179.) Upon review of the record, we will not disturb the trial court's conclusion that Willis was proved guilty beyond a reasonable doubt.

■ Finally, Camille and Willis contend that they were denied a fair trial when the judge improperly restricted cross-examination of the victim about whether the fact that his brother was a police officer at the station where Eddie was charged with molesting Camille's daughter had any bearing on why the complaint was not filed. We note, however, that defendants failed to specifically raise this issue in their post-trial motions, which results in waiver upon review. It is well established that in order to preserve an issue for review, defendant must object both at trial and in his post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) While the plain error rule can be invoked in instances where the error complained of is so egregious that it deprives defendant of a fair trial, we do not find that the circumstances of this case warrant its application.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN, P.J., and RAKOWSKI, J., concur.