THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ELON COLEMAN, Defendant-Appellant.

Third District    No. 3—03—0077

Opinion filed February 5, 2004.

Peter A. Carusona, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward D. Smith, State's Attorney, of Kankakee (Lawrence M. Bauer and Dawn D. Duffy, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE HOLDRIDGE delivered the opinion of the court:

A jury found the defendant, Elon Coleman, guilty of armed robbery (720 ILCS 5/18—1(a), 18—2(a) (West 2002)) and aggravated vehicular hijacking (720 ILCS 5/18—3(a), 18—4(a)(3) (West 2002)). The trial judge then vacated the hijacking conviction and sentenced the defendant to 10 years' imprisonment for armed robbery. On appeal, the defendant argues that the State failed to prove the presence of a dangerous weapon beyond a reasonable doubt and asks that we reduce the conviction to simple robbery. We affirm.

## I. FACTS

At trial, the victim, Yashica Butler, testified that on the evening of May 16, 2002, she had just retired to bed when her brother knocked on her bedroom door. He informed Butler that a young girl by the name of Shantae was at the front door. That name was not familiar to Butler, but she went to the front door to see who it was.

When Butler reached the door, she recognized the young girl. Butler and her boyfriend had seen the girl at a gas station a couple of days earlier. The young girl stated that she had just been riding in a car with three men who were trying to take her to a hotel and rape her. The girl had recognized the vehicle of Butler's boyfriend in the driveway from the gas station and was asking for a ride home. Butler agreed to help the girl and they drove off in the vehicle of Butler's boyfriend.

The girl took Butler to a house the girl identified as her aunt's. Butler waited to make sure the girl made it inside safely. The girl

went around the back of the house and then returned to the vehicle. The girl stated that her aunt wanted to see who had dropped her off, so Butler went with her to the side door. While the girl was unsuccessfully trying to open the door, a male (later identified as the defendant) came around from the other side of the house.

Sensing that there was something suspicious happening, Butler turned to leave. At this point the young girl grabbed Butler from behind, putting her arm around Butler's throat. As Butler tried to pull away from the girl, she received a straight, thin cut on the left side of her throat. Also at that time, the young girl indicated that she was going to "cut" Butler. It is unclear from the testimony whether Butler actually saw an "object" in the girl's hand or simply assumed that there was one on the basis of the cut she received and the young girl's statement. On cross-examination, Butler indicated that she could not be sure what, if anything, the young girl had in her hand. She also admitted that whatever had cut her could have been a fingernail, ring, or bracelet.

Butler testified that at this point the defendant patted her down. Butler told the assailants that she did not have anything worth taking except her car. The defendant then took her car keys and purse. He told the young girl, "We got what we came for, let's go." The two then left with the vehicle.

Butler ran to a phone and called the police. She then met the police back at her home and gave a description of the assailants and the stolen vehicle. In a stipulated statement, Officer Richard Rangel of the Calumet City police department indicated that he was on patrol the following morning when he responded to a call about a suspicious vehicle. Officer Rangel located the vehicle, and his efforts to pull the vehicle over resulted in a high-speed chase. The vehicle he was chasing was in fact the same vehicle stolen the night before. The young girl was driving the vehicle and the defendant was in the passenger seat. The young girl soon lost control of the vehicle and came to a stop off the roadway. Both occupants were taken into custody. No weapon was recovered.

After all the testimony, the jury found the defendant guilty of armed robbery and aggravated vehicular hijacking. After the trial, the court denied the defendant's motion for a new trial, vacated the hijacking conviction, and sentenced the defendant to 10 years' imprisonment for armed robbery. This appeal followed.

## II. ANALYSIS

The defendant argues that the State failed to prove him guilty of armed robbery beyond a reasonable doubt. Specifically, the defendant

submits that there was insufficient evidence of the presence of a dangerous weapon at the scene of the robbery.

When considering the sufficiency of the evidence to support a criminal conviction, the standard of review is whether, after viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 478 N.E.2d 267 (1985). A person commits armed robbery when he or his accomplice takes property from the person of another by the use of force and is armed with a dangerous weapon. 720 ILCS 5/18—1(a), 18—2(a) (West 2002). Proof of a dangerous weapon may be established on the basis of circumstantial evidence. *People v. Meadows*, 92 Ill. App. 3d 1028, 416 N.E.2d 404 (1981).

The defendant argues that Butler's testimony was inconsistent and insufficient to prove the existence of a dangerous weapon beyond a reasonable doubt. He argues that Butler's testimony shows not only that Butler could not identify what kind of weapon the young girl may have had, but that Butler did not even know whether she had a weapon at all. He further contends that Butler merely assumed that there was a weapon because she was cut by something sharp. In making this argument, the defendant relies primarily on *People v. Bias*, 131 Ill. App. 3d 98, 475 N.E.2d 253 (1985).

In *Bias*, the victim testified that the defendant "pointed something which felt sharp" against his neck during the commission of a robbery. *Bias*, 131 Ill. App. 3d at 100. The victim admitted that he did not see the object, and further admitted on cross-examination that it could have been a very sharp fingernail. The victim was not hurt and no weapon was ever recovered. On appeal, the court held that this testimony was insufficient to prove the existence of a dangerous weapon and reduced the defendant's armed robbery conviction to simple robbery. *Bias*, 131 Ill. App. 3d 98, 475 N.E.2d 253.

We do not find the *Bias* case controlling here. In *Bias*, the court indicated that the only evidence of the object involved was the victim's testimony that the object might have been a very sharp fingernail. Aside from this testimony, the court found "the record before us does not contain a shred of evidence that any particular type of dangerous weapon was present at the time." *Bias*, 131 Ill. App. 3d at 107, 475 N.E.2d at 259. It was on this basis that the court reduced the conviction to simple robbery.

*Bias* is distinguishable because here there *is* additional evidence that a dangerous weapon was present. First, Butler did sustain a cut or a scratch on her neck when she pulled away from the young girl. Second, shortly thereafter the young girl indicated that she was going to "cut" Butler.

We find the circumstances of *People v. Rice*, 109 Ill. App. 2d 391, 248 N.E.2d 745 (1969), to be more analogous to the case at hand. In that case, the victim's throat was cut during a robbery. The victim never saw a weapon, nor was a weapon ever recovered from the defendant. The only evidence of a weapon was the cut, which the defendant argued could have been caused by a ring, and the fact that a witness indicated the defendant ran away with a razor in hand. The court upheld the armed robbery conviction, indicating that the existence of a weapon may be properly inferred from this evidence. *Rice*, 109 Ill. App. 2d 391, 248 N.E.2d 745.

■ As in the *Rice* case, here the victim was cut by a weapon she could not identify. Also as in *Rice*, a weapon was never recovered. It is true that in *Rice*, there was a witness who indicated that there was a razor present. *Rice*, 109 Ill. App. 2d 391, 248 N.E.2d 745. Such a statement is direct evidence that a weapon was present. While we do not have such direct evidence in this case, there was testimony that one of the assailants indicated that the she was going to "cut" Butler. That evidence, as well as the cut itself, is a significant piece of circumstantial evidence leading to an inference that a dangerous weapon was present.

It is true that the victim's testimony about the weapon was somewhat confused. Nevertheless, so long as additional evidence such as the cut and the young girl's statement exists, a conviction for armed robbery may be upheld "even though the weapon itself was neither seen nor accurately described by the victim." *People v. Elam*, 50 Ill. 2d 214, 220, 278 N.E.2d 76, 79 (1972) (victim told by defendant that the weapon pointed in his back was a gun when in fact defendant was later apprehended armed only with a knife); *People v. DuPree*, 69 Ill. App. 3d 260, 387 N.E.2d 391 (1979) (all victim saw was outline of gun wrapped in handkerchief when robber announced a "stick-up"); *People v. Moore*, 14 Ill. App. 3d 361, 302 N.E.2d 425 (1973) (victim unsure whether shiny object in defendant's hand was gun or knife). In light of all the testimony and the high standard of review, we cannot say that it was unreasonable for the jury to have found the defendant guilty of armed robbery.

## III. CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Kankakee County.

Affirmed.

LYTTON and McDADE, JJ., concur.