THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. C.H., Defendant-Appellant.

Second District No. 2—90—1379

Opinion filed November 20, 1992.

William H. Wise, of Chicago, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

After a bench trial, the circuit court of Du Page County convicted defendant, C.H., of aggravated criminal sexual abuse (Ill. Rev. Stat. 1991, ch. 38, par. 12—16(b)). The court sentenced defendant to 30 months' probation, including six months' work release. Defendant appeals, contending that (1) his rights to due process and to confront witnesses were denied when the trial court permitted a Department of Children and Family Services (DCFS) investigator to testify regarding her interview with the victim; (2) the State failed to prove him guilty beyond a reasonable doubt; and (3) he was denied the effective assistance of counsel where his trial counsel failed to request a hearing to determine the competency of the minor witnesses and failed to object to certain allegedly improper questions.

The victim was defendant's stepdaughter, A.B., who was 10 years old at the time of trial. She testified that defendant would read bedtime stories to her and her sister, E.B. Defendant would sit on the bed between the girls. While reading the stories, defendant would sometimes rub A.B.'s stomach. Sometimes he would touch her on her "bottom" underneath her clothes. She described her "bottom" as "right below the back bone" and the part of her body which she uses to "go to the bathroom."

A.B. further testified that sometimes she would get up and pretend to go to the bathroom in hopes of avoiding further touching. Once her mother became suspicious and asked her whether defendant had been touching her. She told her mother that he had only touched her on her stomach. She said this because she was embarrassed and afraid.

E.B. also testified that defendant would read stories to her and her sister. Sometimes A.B. would get up and go to the bathroom during the stories.

D.H. testified that she is defendant's wife and A.B.'s mother. One night in August 1988, she saw defendant sitting on the side of the bed next to A.B., with his hand on her bare thigh. After discussing this incident with her counselor, she told defendant that she thought his actions were inappropriate. On another occasion, she walked into the bedroom while defendant was reading to the children. A.B. jumped out from under the covers and said, "No, mommy, nothing is

happening here." A.B. appeared extremely upset. She was quivering, very tense and nervous.

The following day, she questioned A.B. about the incident. A.B. said only that "[C.H.] was rubbing her tummy."

She subsequently brought defendant to see her counselor, Dr. Schwab, to discuss the incident with A.B. Defendant admitted that he rubbed A.B.'s stomach, but denied touching her improperly.

D.H. testified that on September 1, 1989, she and defendant were sleeping apart and had been for some time. During the early morning hours, defendant twice entered the room where she slept and woke her up. He told her that he was disappointed that her counseling was not going well, that her "attitude problem" was the source of their problems, and that she should apologize to him for taking him to Dr. Schwab. The second time, he told her that A.B. should apologize to him also.

That evening, D.H. went to the police station. She had previously obtained an order of protection against defendant which prohibited him from harassing her. She felt that he had violated the order of protection the previous night. At the police station, she talked to Officer Juliet Fabbri. During the interview, Fabbri suggested that D.H. return to the police station with her children, so that they could be interviewed by a DCFS investigator.

D.H. stated that she did subsequently return to the police station with her children. A.B. was interviewed by MaryEllen Schaid of DCFS. She and her children then spent the night at a shelter for battered women.

D.H. recalled that on September 15, 1989, she arranged to meet defendant at the library to discuss the sale of their home. She said that she felt the money in the parties' savings accounts should go toward the down payment on a new home for her and her daughters. Defendant replied that none of the funds in the savings accounts could go toward finding a new home. She asked him why and he said, "Because."

D.H. then asked defendant, "Are you telling me that [A.B.] lied?"

Defendant leaned over the table and said, "No, she didn't, but I can't go to jail." Later, outside the library, he said, "Do you know what they do to child molesters in prison?"

D.H. also stated that defendant's former wife had told her about incidents of alleged sexual abuse involving defendant's natural children.

MaryEllen Schaid testified about her interview with A.B. at the police station. Defendant objected to her testimony and requested

that the court conduct a hearing pursuant to section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 115—10) to determine whether the circumstances surrounding A.B.'s statements to Schaid demonstrated sufficiently the reliability of those statements. The court stated that since it was a bench trial, he would allow Schaid to testify. At the conclusion of her testimony he would rule on the admissibility of the victim's statements to Schaid. Defense counsel acquiesced in this procedure.

Schaid testified that on September 1, 1989, she interviewed A.B. in a private room at the police station. The interview was not taped. She identified herself as someone who "talked to children when they got hurt or got touched by people" and said that "sometimes some of the kids I talk to get touched on their private parts." She asked A.B. if she had ever been touched on her private parts. A.B. said that she had. She said that the touching had occurred "lots of times" and that the most recent time was approximately two weeks prior to the interview.

Schaid and her partner, James Grady, also interviewed defendant at his home. Defendant admitted that he would rub A.B.'s stomach under her clothes. He explained that he had a "target zone" and that he might have missed it on at least one occasion. He recalled one instance in which he touched A.B.'s "pubic bone" and did not remove his hand immediately.

Grady's testimony was similar to Schaid's regarding his interview with defendant. Grady added that as he and Schaid were leaving defendant's house, defendant said that "he felt like he could go upstairs and cry when he thinks about what he did to [A.B.] mentally."

The next day, the court heard arguments from counsel regarding the admissibility of Schaid's testimony concerning her interview with A.B. After the arguments the court stated:

> "The statute provides that the Court can allow the statement into evidence, if the court finds at the time, contact and circumstances surrounding the statement provide sufficient safeguards of reliability and the child who allegedly made the purported statement testifies at the hearing.
>
> I think that the State has met their [sic] burden of showing me that it is admissible under 115—10 and, of course, the weight that the Court will attach to that statement is a different matter which will be taken up at the time I hear arguments in the case, but I will allow the statement under 115—10."

Following the court's ruling, the State rested.

C.T., defendant's ex-wife, testified for the defense. She denied that she ever told D.H. that defendant had engaged in inappropriate conduct with his natural children. She denied that she ever accused him of such conduct during their divorce proceedings.

Defendant testified. He admitted that he rubbed A.B.'s stomach while reading to her. He denied that he touched other parts of her body. He denied making incriminating statements to D.H. or James Grady.

The court found defendant guilty. Following the denial of his post-trial motion, defendant filed a timely notice of appeal. On appeal, defendant contends that his rights under the due process and confrontation clauses were violated by the admission of Schaid's testimony about her interview with A.B. Defendant contends that insufficient "indicia of reliability" surrounded A.B.'s statements to Schaid. Specifically, defendant notes that she introduced herself to A.B. as someone who talks to children who "get touched on their private parts." No one else was present at the interview besides Schaid and A.B. The session was not videotaped. Schaid almost immediately steered the questioning to the subject of A.B.'s "private parts," and most of A.B.'s subsequent statements came in response to leading questions. These circumstances, defendant suggests, rendered A.B.'s statements unreliable.

The State responds initially that defendant has waived this constitutional issue by failing to raise it in the trial court. The State noted that while defendant objected to the admission of Schaid's testimony pursuant to section 115—10, he failed to raise any argument under the confrontation clause until his brief in this court.

Generally, arguments raised for the first time on appeal are deemed waived. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186.) In the instant case, defendant bases his confrontation clause argument primarily on *Idaho v. Wright* (1990), 497 U.S. 805, 111 L. Ed. 2d 638, 110 S. Ct. 3139, a case decided two months after the trial in the instant case. Under these circumstances, it would be unfair to apply the waiver rule. *People v. Kargol* (1991), 219 Ill. App. 3d 66, 73.

■ We conclude, however, that the confrontation clause is not implicated in this case. The constitution provides that the accused in a criminal case shall have the right to confront the witnesses against him. (U.S. Const., amend. VI.) The confrontation clause has been interpreted as barring the State from introducing some, but not all, hearsay testimony. (*Wright*, 497 U.S. at 813-14, 111 L. Ed. 2d at 651, 110 S. Ct. at 3145.) *Wright*, as well as the other confrontation clause

cases which defendant cites, involved child witnesses who were deemed unavailable to testify.

In the instant case, the complaining witness did testify and was subjected to cross-examination. The Supreme Court has stated that it is the literal right to "confront" the witness which is at the core of the values protected by the confrontation clause. Thus, the court stated, there is "good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." (*California v. Green* (1970), 399 U.S. 149, 157-58, 26 L. Ed. 2d 489, 496-97, 90 S. Ct. 1930, 1934-35.) This court recently stated unequivocally that the confrontation clause was not implicated where, as here, the declarant was available to testify. *People v. Edwards* (1992), 224 Ill. App. 3d 1017, 1028.

In the instant case, the victim did testify and was subjected to cross-examination on a variety of subjects, including her statements to Schaid. Under these circumstances, there is simply no confrontation clause violation. This does not end our inquiry, however. Defendant's argument also refers to the statutory requirements of section 115—10 for admission of out-of-court statements by victims of sexual abuse who are age 13 or younger. Defendant objected to Schaid's testimony on this basis in the trial court and raised the issue in his post-trial motion. Arguably, defendant has waived this issue by explicitly relying on the confrontation clause in his brief in this court. However, because the admission of improper hearsay could have deprived the defendant of a fundamentally fair trial, we choose to consider the question of whether the victim's out-of-court statements were admissible under section 115—10.

Section 115—10 provides in relevant part:

"In a prosecution for a sexual act perpetrated upon a child under the age of 13, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child of an out of court statement made by such child that he or she complained of such act to another; and

(2) testimony of an out of court statement made by such child describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceeding; or

(B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement." (Ill. Rev. Stat. 1989, ch. 38, par. 115—10.)

In *Edwards*, although this court held that the confrontation clause was not violated, we nonetheless held that the analysis of *Idaho v. Wright* was useful in determining whether statements were properly admitted under section 115—10. The issue in *Wright* was whether the circumstances surrounding the victim's out-of-court statements contained sufficient "indicia of reliability" to permit introduction of the statements under Idaho's residual hearsay exception despite defendant's inability to cross-examine the complainant. The relevant circumstances to be examined are those surrounding the making of the statement and which render the declarant particularly worthy of belief. These may include spontaneity of repetition, consistency of repetition, use of terminology unexpected of a child, and whether the child had a motive to lie. *Edwards*, 224 Ill. App. 3d at 1028, citing *Wright*, 497 U.S. at 820-21, 111 L. Ed. 2d at 655-56, 110 S. Ct. at 3149-50.

 Considering the facts of the instant case in light of these principles, we are unable to conclude that the court erred in admitting A.B.'s out-of-court statements. The questions which Schaid asked were not unduly suggestive and the environment of the interview was not coercive. A.B.'s description of the abuse was consistent throughout the interview and was consistent with her trial testimony. Also, there is no evidence that A.B. had a motive to lie.

We do not believe the record supports defendant's contention that Schaid's questions to A.B. were unduly suggestive. We note that Schaid testified only in general terms concerning what took place at her interview with A.B. Much of her testimony consisted of summaries or paraphrases of the interview. Defendant made no attempt to elicit from Schaid specific questions and answers. It appears that Schaid did ask some leading questions. However, this is understandable in light of the victim's age and the need to focus the interview. It appears generally that A.B.'s responses were in her own words. The fact that statements were made in response to questions does not render them inadmissible. (*Edwards*, 224 Ill. App. 3d at 1031; *People v. Deavers* (1991), 220 Ill. App. 3d 1057, 1070.) Certainly, the record

does not support defendant's contention that A.B. "was merely acting as a puppet for the investigator."

It also does not appear that the environment of the interview was unduly coercive. Schaid was the only person in the room with the complainant. There is no evidence in the record that she behaved threateningly or otherwise intimidated A.B.

Further, there is no evidence that A.B. had any motive to lie. (*Cf. People v. Schott* (1991), 145 Ill. 2d 188, 207 (complainant told investigator she made up story about defendant because "[s]he was angry at him for something").) In this case, there is no evidence that A.B. had any reason, apart from the alleged abuse itself, to be angry with defendant. Defendant notes that his wife may have had a motive to lie. D.H.'s testimony makes clear that her marriage to defendant was in trouble prior to the allegations of sexual abuse. She also testified that defendant repeatedly harassed her, necessitating her obtaining an order of protection against him. While this may be true, there is simply no evidence that A.B. was similarly motivated to lie or that D.H. manipulated A.B. to make false allegations. D.H. testified that, although she mentioned her concerns about defendant and A.B. to Officer Fabbri, she "hoped it wasn't true." There is simply no evidence that she talked to A.B., either before the interview with Schaid or before her trial testimony, and encouraged her to fabricate allegations of sexual abuse.

Finally, we note that A.B.'s allegations were consistent throughout her interview with Schaid. Her trial testimony was also consistent with these statements. Cross-examination failed to bring out any inconsistencies or contradictions in her testimony. Considering all the circumstances, we believe that A.B.'s statements to Schaid were sufficiently reliable that the court did not err in admitting them.

The supreme court recently reached the same conclusion under similar circumstances. In *People v. Wittenmyer* (1992), 151 Ill. 2d 175, the court held that out-of-court statements to a police detective by a minor sex abuse victim were properly admitted. The court noted that the victim's answers were primarily in her own words and nothing in the record indicated that the interviews were threatening or coercive. (*Wittenmyer*, 151 Ill. 2d at 186.) The court also rejected the defendant's suggestion that due process required videotaping of the interview. *Wittenmyer*, 151 Ill. 2d at 187.

Defendant makes several additional contentions. He notes that Schaid was the only person present besides the victim. He cites no authority, however, for the contention that this circumstance renders the statements inadmissible. We note that the statements held admissible

in *Wittenmyer* were apparently made in the course of a one-on-one interview with the detective.

Defendant further contends that the complainant's delay in reporting the abuse renders her subsequent statements unreliable. Defendant notes that A.B. told Schaid that the most recent incident of abuse occurred at least two weeks prior to the interview. However, courts have repeatedly held that a relatively slight delay in reporting abuse does not render subsequent statements unreliable. (See *Edwards*, 224 Ill. App. 3d at 1031 (three-month delay "insignificant"); *People v. Anderson* (1992), 225 Ill. App. 3d 636 (one-month delay); *Deavers*, 220 Ill. App. 3d at 1069 (complainant's failure to complain earlier does not necessarily diminish the reliability of her later statements).) Here, we do not consider the two-week delay to be significant, given the victim's testimony that she was afraid and embarrassed.

Finally, defendant complains that the court erred in refusing to conduct a separate hearing to determine the admissibility of Schaid's testimony. Instead, the court stated that it would allow Schaid to testify and it would rule on the admissibility of A.B.'s out-of-court statements afterward. Defendant contends that this procedure may have tainted the trial court. Initially, we note that defense counsel acquiesced in this procedure, and thus any error in this regard is waived. Moreover, we note that this was a bench trial. In a bench trial, the court is presumed to consider only admissible evidence. (*People v. Hart* (1991), 214 Ill. App. 3d 512, 524; *People v. Roy* (1990), 201 Ill. App. 3d 166, 183.) In light of this presumption, the *Roy* court refused to consider as plain error the court's failure to conduct a separate hearing. Similarly, in *Hart*, the reviewing court found the lower court's failure to conduct a separate hearing to be harmless error. In the instant case, the trial court's remarks show that it applied the correct test in ruling on the admissibility of A.B.'s statements to Schaid. We do not believe that the court committed plain error.

Defendant cites *People v. Coleman* (1990), 205 Ill. App. 3d 567. That case, however, is distinguishable. The *Coleman* court reversed defendant's conviction on other grounds. Since the cause was being remanded, the court directed the trial court to conduct a new hearing on defendant's section 115—10 claim in conformity with *Idaho v. Wright*. In the instant case, although likewise decided prior to *Wright*, the court considered the appropriate standard in determining the statements to be admissible. There is no need to remand for a new hearing.

Defendant's second contention is that the State failed to prove him guilty beyond a reasonable doubt. Specifically, defendant makes two related contentions. First, defendant maintains that the State failed to prove that an act of sexual conduct occurred. Second, defendant contends that the State failed to show that defendant acted with the intent to obtain sexual gratification. According to defendant, the State proved, at most, that he innocently rubbed A.B.'s stomach and may have accidentally touched her pubic area. The State responds that the circumstantial evidence was sufficient to show that defendant committed an act of sexual conduct with the requisite intent.

The relevant statute provides that the accused "commits aggravated criminal sexual abuse if he or she commits an act of sexual conduct with a victim who was under 18 years of age when the act was committed and the accused was a family member." (Ill. Rev. Stat. 1989, ch. 38, par. 12—16(b).) In turn, "sexual conduct" is defined as "any intentional or knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus or breast of the victim or the accused, or any part of the body of a child under 13 years of age, for the purpose of sexual gratification or arousal of the victim or the accused." Ill. Rev. Stat. 1989, ch. 38, par. 12—12(e).

Criminal convictions are not to be overturned on review unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt. The relevant question is whether, after considering the evidence in the light most favorable to the prosecution, *any* rational trier of fact could find the essential elements of the offense beyond a reasonable doubt. (*People v. Schott* (1991), 145 Ill. 2d 188, 203; *People v. Collins* (1985), 106 Ill. 2d 237, 261.) The issue of the witnesses' credibility is reserved for the trier of fact, and in a bench trial great deference and weight must be given to the trial court's determination of the credibility of the witnesses. (*People v. Allison* (1983), 115 Ill. App. 3d 1038, 1042.) The intent to gratify sexual desires for purposes of the sex offense statutes may be established by circumstantial evidence. *People v. Goebel* (1987), 161 Ill. App. 3d 113, 125; *Allison*, 115 Ill. App. 3d at 1043.

■ In *Goebel*, the court held that where defendant, a school teacher, deliberately stretched out his hand a considerable distance and touched the victim's breast, the court could infer that defendant acted with the intention of satisfying his sexual desires. In the instant case, A.B. testified that defendant touched her pubic area underneath her clothes numerous times over a period of several months. A.B. testified that these touches so upset her that she frequently feigned go-

ing to the bathroom to avoid them. D.H. testified to A.B.'s startled reaction when she walked in on defendant and A.B. Both D.H. and James Grady testified that defendant made statements indicating a consciousness of guilt. Defendant himself admitted that he might have touched A.B.'s "pubic bone" and failed to remove his hand. From this evidence, the court could infer that defendant deliberately touched the victim with the intention of gratifying his sexual desires. Although defendant testified that he merely rubbed the victim's stomach, and any touching of her pubic area was accidental, the trial court chose to reject this testimony and accept the testimony of A.B. and the other witnesses. We will not disturb the trial court's determinations of the credibility of the witnesses.

Defendant complains that the only evidence of defendant's touching A.B. in improper places came from the prosecutor. Specifically, defendant complains that "there were only two strong statements about a touching of the genital or anus area, both came from the mouth of the Prosecutor. *** [A.B.] never testified about a private spot, only the Prosecutor did. Moreover, several times during the trial [A.B.] testified that Defendant was merely touching her stomach." Defendant then cites to several portions of the record by page and line of the transcript.

Defendant's argument simply misstates the record. Defendant's first record citation, for example, is at the end of the following colloquy:

> "Q. Now, when [defendant] read you stories, did anything unusual ever happen?
>
> A. Well, he would touch me in places that he wasn't supposed to.
>
> Q. When you say, he touched you in places he wasn't supposed to, where did [defendant] touch you?
>
> A. Well, on my bottom.
>
> Q. Could you describe for the Judge what you mean by your bottom?
>
> A. Well, right below the back bone.
>
> Q. Did he ever touch you on any other part of your body?
>
> A. Well, on my stomach."

A.B. later described her "bottom" as the part of her body which she uses "to go to the bathroom."

A.B. clearly testified in response to nonleading questions that defendant touched her between her legs where she "[goes] to the bathroom." This completely belies defendant's assertion that the only

testimony regarding a touching anywhere other than her stomach came from the prosecutor.

The evidence was sufficient to prove beyond a reasonable doubt that defendant committed an act of sexual conduct with A.B. for the purpose of sexual gratification.

Defendant's final contention is that he was denied the effective assistance of counsel where his attorney failed to object to numerous allegedly improper questions and failed to request a hearing on the competency to testify of the two minor witnesses.

To succeed on a claim of ineffective assistance of counsel, defendant must establish that (1) counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that, but for counsel's errors, the result of the proceedings would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese* (1984), 104 Ill. 2d 504, 525.) A strong presumption exists that counsel's performance falls within the wide range of professional competence. (*People v. Barnard* (1984), 104 Ill. 2d 218, 233.) It is not incompetent for counsel to refrain from raising issues which he believes are without merit unless his assessment of the merits is patently wrong. (*Barnard,* 104 Ill. 2d at 231.) Matters involving counsel's exercise of judgment or trial tactics do not give rise to a claim of ineffective assistance of counsel. *People v. Madej* (1985), 106 Ill. 2d 201, 214.

Defendant's argument concerning the lack of objections consists of numerous citations to the transcript by page and line number and the alleged basis for an objection. Absent is any citation of authority with regard to why the questions were improper or how defendant was prejudiced by admission of the evidence. The allegedly improper questions and answers fall into two general categories: leading questions during the State's direct examination of A.B. and allegedly irrelevant testimony by D.H. regarding her and defendant's marital difficulties and previous allegations of sexual misconduct by defendant with his natural children made by defendant's ex-wife.

■ Defendant was not prejudiced by counsel's failure to object to leading questions. Assuming for the sake of argument that the failure to object fell below an objective standard of reasonableness, defendant suffered no prejudice. We have already noted that A.B. testified to the essential elements of the offense in response to nonleading questions. That some preliminary or follow-up questions may have been leading did not detract from this testimony. Moreover, it is well established that leading questions may be asked of a child witness. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §611.9, at 412

(5th ed. 1990), citing *People v. Luigs* (1981), 96 Ill. App. 3d 700.) From our review of the record, it is clear that the prosecutor's questions to A.B. were not so suggestive as to undermine the reliability of her testimony. Thus, defendant was not prejudiced by counsel's failure to object to these questions.

Defendant was similarly not prejudiced by counsel's failure to object to D.H.'s testimony. D.H.'s testimony concerning the order of protection was relevant to show why she went initially to the police station on September 1, 1989. Her testimony about alleged prior instances of sexual misconduct by defendant, even if arguably inadmissible, was substantially impeached by the testimony of defendant's ex-wife, C.T., and his daughter, E.H. In announcing its finding, the trial court stated that even if it discounted D.H.'s testimony completely, it found the evidence sufficient to prove defendant's guilt beyond a reasonable doubt. Moreover, the court specifically stated that it was giving no weight to allegations of sexual conduct with anyone but A.B. Thus, testimony by D.H. about additional instances of sexual misconduct was substantially impeached, and the trial court gave it no weight in reaching its decision. It follows that defendant could not have been prejudiced by his counsel's failure to object to this evidence.

We have examined defendant's additional contentions of failure to object to allegedly improper questions and found them to be without merit.

Defendant's final contention is that counsel was ineffective for failing to request a hearing to determine the competency of the two minor witnesses to testify. Once again, we disagree with defendant.

A.B. was 10 years old at the time of trial. Her sister, E.B., was eight. All witnesses are presumed to be competent to testify. (Ill. Rev. Stat. 1989, ch. 38, par. 115—14.) The degree of a child's intelligence, rather than chronological age, is the critical factor in determining competency. If the witness is sufficiently mature to receive correct impressions by her senses, to recollect and narrate intelligently and to appreciate the moral duty to tell the truth, then the witness is competent to testify. *People v. Garcia* (1983), 97 Ill. 2d 58, 75; *In re A.M.C.* (1986), 148 Ill. App. 3d 775, 778.

In the instant case, in evaluating the testimony of the various witnesses, the trial judge specifically stated that he found A.B. to be "an articulate, candid, open, intelligent and honest witness." Our independent review of the record supports this conclusion. In preliminary questioning by the prosecutor, A.B. correctly stated her name, her age, the name of her school and her grade, her address, her other

family members and the age of her sisters. Throughout her testimony she gave appropriate answers to questions asked of her. In light of the trial court's assessment of A.B.'s testimony, a challenge to her competency would certainly not have been successful.

Similarly, the record would support a finding that E.B. was a competent witness. In any event, as the State points out, E.B.'s testimony was not particularly significant to the State's case. She merely confirmed that defendant would read to her and her sister, which defendant does not deny, and that A.B. would sometimes go to the bathroom during the stories. Assuming for the sake of argument that E.B. was an incompetent witness, striking her testimony would not have altered the outcome of the trial. Therefore, any error in permitting her to testify was harmless beyond a reasonable doubt.

Since defendant was not prejudiced by any alleged errors of his trial counsel, he was not denied the effective assistance of counsel.

For the foregoing reasons, defendant's conviction and sentence are affirmed.

Affirmed.

INGLIS, P.J., and DOYLE, J., concur.