NOTICE
Decision filed 01/31/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220724-U

NO. 5-22-0724

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 17-CF-600 |
| | ) | |
| WILLIAM W. FENTON, | ) | Honorable |
| | ) | Joseph M. Leberman, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McHANEY delivered the judgment of the court.
Presiding Justice Vaughan and Justice Moore concurred in the judgment.

**ORDER**

¶ 1    *Held:*  Where the State proved the essential elements of the offense beyond a reasonable doubt, we affirm the defendant's conviction of aggravated sexual abuse.

¶ 2    On December 6, 2017, the State charged the defendant, William Fenton, with a five-count indictment in Jackson County, Illinois. The State proceeded to trial on a superseding indictment filed August 19, 2021, containing one count of criminal sexual assault (720 ILCS 5/11-1.20(a)(3) (West 2020)) and two counts of aggravated criminal sexual abuse (*id.* § 11-1.60(b)). The defendant waived jury, and after a bench trial, he was acquitted on the criminal sexual assault count and convicted on both counts of aggravated criminal sexual abuse. On October 17, 2022, the defendant was sentenced to 30 months of probation and 30 days in the county jail.

1

¶ 3                                    I. Background

¶ 4     On August 19, 2021, the State elected to proceed on a superseding bill of indictment that charged defendant with one count of criminal sexual assault (*id.* § 11-1.20(a)(3)) and two counts of aggravated criminal sexual abuse (*id.* § 11-1.60(b)). Count I alleged that on or about July 28, 2017, the defendant placed his finger in his stepdaughter J.S.'s sex organ; count II alleged that on or about July 7, 2017, the defendant touched the sex organ of J.S. under her clothing, with his finger; and count III alleged that on or about July 15, 2017, the defendant touched the breast of J.S. under her clothing, with his hand.

¶ 5     After the defendant waived his right to a jury trial, the case proceeded to bench trial on August 8, 2022. At trial, J.S., the alleged victim, testified that her parents divorced when she was two years old, and because of their divorce, she spent half of her time with her mother and half of her time with her father. When she was seven years old, her mother married the defendant, who she referred to as her stepfather.

¶ 6     J.S. testified that on July 30, 2017, she went to her father's house as regularly scheduled. On that date, she told her father that she did not want to return to her mother's house because her stepfather, the defendant, had been "touching her." J.S. then called her mother and told her the same information. Both parents went to the police station and were later interviewed by police. During the investigation and at trial, J.S. said that on July 28, 2017, around 9 p.m., she was at her mother's house, and her mother was asleep upstairs. The defendant, J.S., and the defendant's two-year-old twin grandchildren were in the living room. The twins were asleep on the floor, J.S. was lying on the floor beside the couch, and the defendant was sitting on the couch. The defendant eventually lay down next to J.S. on the floor, with his head near her feet. Both of their bodies were facing the same direction. J.S. told the defendant her calves hurt, and the defendant began to rub

2

them. J.S. said he then began to rub her thighs, then her butt, and then put the tip of his finger in her vagina. J.S. testified that her clothes were on during this time, and the defendant had slid his hand through the foot of her pants, moving his hand beneath her underwear.

¶ 7    J.S. further testified that this was not the first time the defendant had touched her inappropriately. A few weeks prior to July 28, 2017, the defendant and J.S. were again lying on the floor of the living room. He began rubbing her stomach under her shirt, moving downward, touching the top of her pubic area with the back of his hand under her shorts and underwear. The following is a portion of the direct examination of J.S., where the State posed the questions and J.S. provided the answers:

> "Q. Describe to me—Well, first of all, do you recall what you were wearing?
>
> A. I believe I was wearing athletic shorts and just a t-shirt.
>
> Q. And at what point did he start touching you and where?
>
> A. He started touching me like in the middle of my stomach with the open palm of his hand and then once he got to my waistband he used the back of his hand.
>
> Q. So when he was touching your stomach was that over clothing, underneath clothing, or something else?
>
> A. It was underneath clothing.
>
> Q. And had he ever touched you like that before on your stomach?
>
> A. No.
>
> Q. And when you said he touched you, exactly how was he touching you? Was his hand still, moving, or something else?
>
> A. It was—Yeah, it was like—He was just rubbing the top of my stomach with his open palm.

Q. Okay. And then did that change?

A. He just moved down from my stomach to my waistband and once he did that he flipped his hand over to the back of his hand and then used the back of his hand to rub like my pubic area.

Q. Was that over clothing, under clothing, or something else?

A. Under clothing.

Q. You said that you were wearing athletic shorts. Did you have underwear on?

A. I did.

Q. Was—When he started rubbing your pubic area was that on top of your underwear or under your underwear?

A. Under my underwear.

Q. And can you describe to me exactly what he touched, what part of your body?

A. He just touched the pubic area. He didn't get like to the folds or anything.

Q. Okay. So was it the top or bottom or the side of your pubic area?

A. It was the top.

Q. Okay. And when his hand got to that point, what—what was his hand doing, if anything?

A. It was just kind of sweeping back and forth."

J.S. went on to further state that the defendant touched her in this manner for "a couple minutes."

¶ 8      Lastly, J.S. testified to another incident in July where she was seated on the floor against the couch. The defendant started rubbing her shoulders and back. At some point, he began to rub her left breast, under her shirt, touching her nipple. J.S. testified that she was 13 in early July 2017 and 14 in the later portion of July 2017.

4

¶ 9    Next, Illinois State Police (ISP) Sergeant Jason Colp testified that on July 31, 2017, J.S. and her parents came into the ISP headquarters to report she had been sexually abused by the defendant, her stepfather. After speaking with them, Sergeant Colp interviewed the defendant, which was audio and video recorded. This video was played as evidence at trial. The defendant stated that J.S. would often massage his back and feet, and he would massage J.S.'s legs, belly, and back. He asserted that J.S. never indicated she was uncomfortable, and in the interview, he denied ever touching J.S.'s breast, either intentionally or accidentally. He did say he remembered rubbing J.S.'s stomach and calf the previous week. Sergeant Colp stated that J.S. disclosed that the defendant had touched her vagina. The defendant denied the allegations and told Sergeant Colp he "did the massaging part, [but] I never crossed the line," and he wished J.S. would have told him she was uncomfortable because then he would have stopped. Later in the interview, the defendant said he did not "knowingly" touch J.S.'s breasts or vagina. At the conclusion of the defendant's recorded interview, the State rested.

¶ 10    The defense moved for a directed verdict, which was denied. Defense counsel called numerous witnesses to testify regarding the defendant's character. The defendant also testified on his own behalf. During his testimony, the defendant stated that he had taken "some steps to become a massage therapist" when he was younger. He later clarified, stating, "Actually it wasn't even a massage therapist, it was a stress relief therapist is what it was, basically an upper body massage." The defendant stated that when his wife or J.S. complained about pain, he would try to help them. If he was massaging J.S.'s back he "wouldn't ask her permission, [he'd] say do you want me to," and she would say yes. He continued to say that J.S. lied about the touching of her breasts, her pubic area, and her vagina. When cross-examined, the defendant acknowledged that he told police

5

he also massaged his own daughter's body, despite his daughter testifying in court that he never gave her massages.

¶ 11 When delivering its verdict, the trial court found that J.S. was a credible witness, while the defendant was not credible due to several inconsistencies. The court stated:

"THE COURT: *** I have looked at the circumstances surrounding the testimony, the circumstances surrounding the testimony, the circumstances surrounding the times of the allegations. I find that J.S. in this case, that that the testimony is credible, and then I have to discern the weight to be given to her testimony.

I have considered the testimony about the relationship between the defendant and the victim prior to these allegations, any reasons why the allegations would be made, particularly at the time that they were, the reporting of the allegations and the timing of that, and I've used those and all other information that was presented in court during this trial to evaluate the weight to be given to the testimony.

Mr. Fenton, I've also considered a statement that you gave to the police and your testimony in court. I don't find your testimony as credible. There are a number of inconsistencies in the statement that you have given."

The trial court found the defendant guilty of counts II and III, the aggravated criminal sexual abuse charges. As to count I, the criminal sexual assault, the court stated that while it found J.S.'s testimony to be credible and "believe[d] that the conduct occurred," it did not believe the State had met its burden, finding the defendant not guilty of criminal sexual assault. After being sentenced to 30 months of probation and 30 days in the county jail, the defendant timely appealed.

6

¶ 12                                    II. Analysis

¶ 13     The defendant's sole argument on appeal is that the State failed to prove him guilty of count II, aggravated criminal sexual abuse, because the State did not prove essential elements of the charged offense, specifically the contact with J.S.'s "sex organ" with his "finger." The defendant does not contest his conviction on count III.

¶ 14     In *People v. Rowlands*, this court set forth the applicable standard of review, stating:

> "When a defendant challenges the sufficiency of the evidence used to convict that defendant, this court reviews the evidence presented at trial in the light most favorable to the prosecution to determine whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime or crimes of which the defendant was convicted. [Citation.] We will not reverse a criminal conviction unless the evidence presented at trial is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt as to the guilt of the defendant. [Citation.] We allow all reasonable inferences from the record in favor of the prosecution, whether the evidence in the case is direct or circumstantial. [Citation.] There is no requirement that this court disregard inferences that flow from the evidence or that this court search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt. [Citation.] We do not retry the defendant, instead leaving it to the trier of fact to judge the credibility of witnesses, resolve conflicts in the evidence, and draw conclusions based on all the evidence properly before the trier of fact." *People v. Rowlands*, 2022 IL App (5th) 200221, ¶ 43.

"[W]e are mindful of the fact that it is axiomatic in Illinois that the testimony of a single witness, if positive and credible, is sufficient to sustain a criminal conviction, even if the testimony is disputed by the defendant." *Id.* "A criminal conviction will not be set aside unless the evidence is

7

so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 225 (2009). This standard is applied in both a bench trial and a jury trial. See *id.* "The relevant question is whether, after considering the evidence in the light most favorable to the prosecution, *any* rational trier of fact could find the essential elements of the offense beyond a reasonable doubt." (Emphasis in original.) *People v. C.H.*, 237 Ill. App. 3d 462, 472 (1992).

¶ 15    In count II, the defendant was charged with aggravated criminal sexual abuse, pursuant to section 11-1.60(b) of the Criminal Code of 2012 (720 ILCS 5/11-1.60(b) (West 2020)). Aggravated criminal sexual abuse is defined as when "[a] person commits an act of sexual conduct with a victim who is under 18 years of age and the person is a family member." *Id.* In the sex offenses portion of the Criminal Code, "sexual conduct" is defined as "any knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus, or breast of the victim or accused ***." *Id.* § 11-0.1. The statute does not contain a definition of "sex organs."

¶ 16    The defendant argues that the State failed to prove that he made contact with the victim's "sex organ." The defendant focuses on the victim's testimony that his hand "didn't get like to the folds or anything." The defendant then cites to medical literature to support his contention that because he did not "get to the folds," the trier of fact could not find that the defendant made contact with the victim's sex organ. In his brief, the defendant includes detailed definitions of various areas of the female anatomy to bolster his argument that he never reached the victim's "sex organ." While informative, this anatomical lesson is unavailing.

¶ 17    We find the cases of *People v. Rowlands* and *People v. C.H.* to be dispositive of the issue before us. In *People v. C.H.*, after a bench trial, the defendant was convicted of aggravated criminal

8

sexual abuse. 237 Ill. App. 3d 462. There, the 10-year-old victim testified that the defendant would sometimes rub her stomach and touch her " 'bottom' " underneath her clothes. *Id.* She described her " 'bottom' " as " 'right below the backbone' " and the part of her body which she used to " 'go to the bathroom.' " *Id.* at 464. The Second District found this testimony sufficient to support the defendant's conviction. *Id.* In *People v. Rowlands*, a jury found the defendant guilty of aggravated criminal sexual abuse and predatory criminal sexual assault of a child. 2022 IL App (5th) 200221. There, the 12-year-old victim testified that the defendant " 'eventually' " moved his fingers inside her pants and " 'tried to go into [her] underwear,' " at which point " 'he didn't really touch [her] private that much, but he did a little bit.' " *Id.* ¶ 10. This court affirmed the defendant's conviction, finding "[a] rational jury, having heard both that the defendant 'played with' B.H.'s pubic hair and that, when he 'tried to go into [her] underwear,' he touched her 'private *** a little bit,' could have concluded beyond a reasonable doubt that both contacts occurred, perhaps within seconds of each other, and could have concluded beyond a reasonable doubt that the defendant's touching of B.H.'s 'private' constituted penetration, however slight, of her vagina." *Id.* ¶ 48.

¶ 18       The trial court, as the trier of fact, judged the credibility of the witnesses. It found that the victim, J.S., was credible, and the defendant was not. When reviewing the evidence presented at trial in the light most favorable to the prosecution, we determine that *any* rational trier of fact could have found beyond a reasonable doubt the essential elements of the crimes of which the defendant was convicted. This is particularly so considering that the trial court acquitted the defendant of the most serious charge of criminal sexual assault.

¶ 19                                    III. Conclusion

¶ 20       For the reasons stated above, we affirm the defendant's conviction.

¶ 21       Affirmed.